Filed 7/20/26  P. v. Andrade CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E084412 |
| v. | (Super.Ct.No. FWV13664) |
| GILBERT ANDRADE, | ORDER MODIFYING OPINION |
|     Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

The opinion filed in this matter on July 13, 2026, is modified as follows:

Pages 11 and 12, footnote 5, delete the sentence "Our independent review of the record shows that defendant was ineligible for section 1172.6 relief as a matter of law."

1

Except for this modification, the opinion remains unchanged.  The modification does not affect a change in the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:


MILLER

Acting P. J.

RAPHAEL

J.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


THE PEOPLE,

    Plaintiff and Respondent,

v.

GILBERT ANDRADE,

    Defendant and Appellant.

E084412

(Super.Ct.No. FWV13664)

OPINION


APPEAL from the Superior Court of San Bernardino County.  Ingrid Adamson Uhler, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Reversed and remanded with directions.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

1

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Christopher P. Beesley and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

Defendant and appellant Gilbert Andrade appeals the trial court's postjudgment order denying his Penal Code[1] section 1172.6 petition to recall his first degree murder (§ 187, subd. (a)) conviction and for resentencing at the prima facie stage. On appeal, defendant argues the trial court erred in denying his petition for resentencing at the prima facie stage because the record of conviction does not show he was convicted as either the actual killer or as an aider and abettor who acted with the intent to kill as a matter of law. He also asserts the trial court impermissibly engaged in factfinding to conclude otherwise and thus the matter should be remanded with directions to issue an order to show cause and to conduct an evidentiary hearing. Based on our Supreme Court's recent decision in *People v. Morris* (2026) 19 Cal.5th 671, 678 (*Morris*), which held that an aider and abettor of murder must actually aid and abet the lethal act in order to be convicted of murder, we agree with defendant that the record of conviction does not show he was convicted as either the actual killer or as an aider and abettor who acted with the intent to kill as a matter of law, and thus the matter must be remanded with directions to issue an order to show cause and to conduct an evidentiary hearing.

---

[1] All future statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual Background*[2]

Defendant, Mario Laguna, Carl Mounts, and others engaged in a plot to kidnap victim R.T.D. after he cooked a tainted batch of methamphetamine that made defendant's sister sick.

On the night of June 23, 1997, Laguna rented a hotel room and waited there with defendant while accomplice Mounts lured the victim to them under the guise of cooking more drugs. Once the victim arrived at the hotel, defendant threatened the victim with a switchblade and bound his hands with duct tape. The following morning, defendant initially transported the victim in his girlfriend's car but later changed to his sister's quieter car to be less conspicuous. Defendant forced the victim into the trunk of the car, and defendant's friend Barry Barns could hear the victim kicking, pounding, and screaming.

Defendant alone then drove the victim to a remote location and bludgeoned him to death with a pipe. An autopsy confirmed that the victim suffered eight to 10 blunt force

---

[2] Because courts may not engage in factfinding at the prima facie stage (*People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*)), we summarize the factual background of the offenses briefly and only as background for understanding the issues. (*People v. Rushing* (2025) 109 Cal.App.5th 1025, 1028, fn. 2 ["These facts are 'for background purposes and to provide context for the parties' arguments.' [Citation.] We do not rely on these facts to review the trial court's determination for [defendant's] prima facie showing."].)

This account is taken from defendant's record of conviction from his direct appeal, case No. E025738. We granted defendant's request to take judicial review of the record in case No. E025738. The reporter's transcript from the direct appeal will be referred to as "TTRT" and the clerk's transcript as "TTCT."

head injuries which caused major fractures to his skull.  Defendant disposed the victim's body and then drove to his mother Marta Gjurich's home.  Defendant's mother helped defendant clean up the physical evidence, including the victim's "brains and bones," from the trunk of his sister's vehicle.

B.  *Procedural Background*

In 1998, a fourth amended information was filed, charging defendant and codefendant Laguna with first degree murder (§ 187, subd. (a)), kidnapping (§ 207), and conspiracy to commit kidnapping (§ 182, subd. (a)(1)).[3]  The fourth amended information also alleged a special circumstance allegation that defendant committed the murder during the commission of a kidnapping (§ 190.2, subd. (a)(17)).  It was further alleged that defendant had sustained two prior serious or violent felony strike convictions (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).  Defendant's mother Gjurich was charged with being an accessory after the fact (§ 32).

In May 1999, a jury convicted defendant of all the charges and found true the special circumstance allegation that defendant committed the murder during the commission of a kidnapping.  In a bifurcated proceeding, the trial court found true that defendant had suffered two prior strike convictions.

In September 1999, the trial court sentenced defendant to life without the possibility of parole in state prison for the murder conviction; sentences of 25 years to life were imposed for the remaining offenses and then stayed.

---

[3]  Defendant and codefendant Laguna were tried separately.

4

On January 30, 2024, defendant filed a petition for resentencing under section 1172.6. The trial court thereafter appointed counsel for defendant.

On July 19, 2024, the trial court held a prima facie hearing under section 1172.6. At that time, the prosecutor argued that the relevant portions of the trial transcript indicated defendant was convicted under a still valid theory that he was the actual killer. The prosecutor explained that "the facts solicited" were that the coconspirators were merely involved in cleaning up the hotel room after the victim was tortured and kidnapped, and that defendant was the killer who "struck the victim multiple times with a pipe, resulting in his death." Defense counsel did not contest defendant's ineligibility for relief, but merely noted defendant was 25 years old at the time of the offenses and expressed hope in reducing his sentence.

The trial court denied defendant's section 1172.6 petition, finding defendant to be the actual killer. The court explained: "My understanding is that, at this juncture, his presence is waived because based on the knowledge of the facts of the case as represented by the prosecution review of the court file, I do not believe that [defendant] has made a prima facie case for resentencing under 1172.6 based on the fact that he was the actual killer. [¶] I am going to indicate for the record that I did review the jury instructions. I do recognize the fact that we did give jury instructions involving conspiracy as well as felony murder, to wit, murder during the commission of a felony, to wit, kidnapping. [¶] I have also reviewed the overt acts that were submitted and alleged in the fourth amended Information. I'll indicate that in the one overt act, which was

5

Number 13, 'In or about June 24th of 1997, coconspirator Gilbert 'Baby' Andrade and/or other unidentified coconspirators murdered victim [R.T.D.] in San Bernardino County.' [¶] So Gilbert 'Baby' Andrade was the only individual actually specifically identified as the actual killer or murderer in the conspiracy to commit murder."

The court added, based on its own recollection of the trial, that "they were actually—the several coconspirators actually testified against Mr. Andrade in regards to those facts" and having been given immunity. The court further noted for the record that defendant was found guilty of first degree murder and that the verdict forms only listed defendant and codefendant Gjurich. The court explained, "Overt Act Number 13 that was reflected in the Information was found true by the jurors, and that the codefendant, Marta Gjurich, was not named in that particular overt act, only Gilbert Andrade, which by reasonable inference and based on the facts, is that the defendant was the actual killer."[4]

After examining the jury instructions and trial transcripts, the court indicated: "Carl Mountz, Barry Barnes, Annette Arista, and James Mongras (phonetic) were accomplices in a matter of law, and they did testify before the jurors in implicating Gilbert Andrade as the actual killer. And that is based on the trial transcripts. [¶] I'll also indicate in review of Jury Instruction Number 43 of the packet, CALCRIM 6.10.5, that I actually gave a specific instruction about, 'A conspiracy is an agreement between two or more persons with a specific intent to agree to commit the crime of being an

---

[4] The verdict form for Overt Act No. 13 shows the jury found the following to be true: "We, the jury in the above entitled action, find that on or about June 24, 1997, co-conspirator GILBERT ANDRADE, and/or other unidentified co-conspirators, murdered victim [R.T.D.] in San Bernardino County."

6

accessory after the fact,' which was not charged as such in this case against the defendant, Marta Gjurich. So the defense in regards to Marta Gjurich is that she was an accessory after the fact and not an actual accomplice during the commission of the actual murder, again, leading to the conclusion that Gilbert Andrade was the actual killer. [¶] So upon my review of the amended Information, the jury instructions, the trial transcripts, I'll indicate that the defendant did not make a prima facie case to withstand going to an Order to Show Cause hearing based on the fact that he was the actual killer, so his petition is denied."

Defendant timely appealed.

### III.

### DISCUSSION

Defendant contends the trial court erred in denying his section 1172.6 petition at the prima facie stage because the record of conviction does not show as a matter of law defendant was the actual killer, and the trial court engaged in impermissible factfinding to conclude otherwise. He thus believes the matter should be remanded with directions to issue an order to show cause and to conduct an evidentiary hearing.

While the appeal was pending, the California Supreme Court issued its decision in *Morris*, *supra*, 19 Cal.5th 671, 678, holding that an aider and abettor of murder must actually aid and abet the lethal act in order to be convicted of murder. We requested briefing on this issue prior to oral argument, and the parties have submitted supplemental briefs.

7

A. *Governing Law and Standard of Review*

Senate Bill No. 1437 (2017-2018 Reg. Sess.), effective January 1, 2019, significantly limited the scope of California's felony-murder rule and eliminated liability for murder under the natural and probable consequences doctrine through two key statutory provisions. (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*).) Section 189 was amended so that a defendant is liable for felony murder only if he was (1) the actual killer, (2) a direct aider and abettor with the intent to kill, or (3) a major participant in the underlying felony and acted with reckless indifference to human life. (*Strong*, at p. 708.) Section 188 was amended to impose a new requirement that, except in cases of felony murder, a principal in the crime of murder can only be convicted where he or she acted "with malice aforethought," and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); see *People v. Curiel* (2023) 15 Cal.5th 433, 449; see *People v. Love* (2025) 107 Cal.App.5th 1280, 1286; *People v. Antonelli* (2025) 17 Cal.5th 719, 724; *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 931.)

"A person convicted of felony murder . . . or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced." (§ 1172.6, subd. (a).) The petition must allege the petitioner was (1) charged with one of the enumerated crimes under a theory of felony murder or other theory under which malice is imputed to a person based solely on

8

that person's participation in a crime; (2) convicted of murder, attempted murder, or manslaughter; and (3) could not presently be convicted of murder because of changes to sections 188 or 189 (Stats. 2018, ch. 1015, §§ 2, 3) made effective January 1, 2019. (§ 1172.6, subd. (a)(1), (2), (3).)

Upon receiving a petition that contains all the required information, the trial court must appoint counsel for the petitioner if requested (§ 1172.6, subd. (b)(3)) and "[a]fter the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that [he] is entitled to relief, the court shall issue an order to show cause" (§ 1172.6, subd. (c)) and proceed to an evidentiary hearing (§ 1172.6, subd. (d)(3)).

"[T]he prima facie inquiry . . . is limited. . . . ' "[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.) At the prima facie hearing, the court may consider the record of conviction. (*Ibid*.) The record of conviction includes jury verdicts, jury instructions, and closing arguments. (*People v. Harden* (2022) 81 Cal.App.5th 45, 54-56 [considering jury instructions and verdicts to determine whether defendant made prima facie showing of eligibility]; *People v. Ervin* (2021) 72

Cal.App.5th 90, 106 [considering sentencing enhancements, jury instructions, closing arguments, and verdicts at prima facie stage].) This does not include our appellate opinion. "[T]he factual summary in an appellate opinion is not evidence that may be considered at an evidentiary hearing to determine a petitioner's eligibility for resentencing. [Citation.] If such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage." (*People v. Flores* (2022) 76 Cal.App.5th 974, 988, fn. omitted; see *People v. Clements* (2022) 75 Cal.App.5th 276, 292 ["[T]rial judges should not rely on the factual summaries contained in prior appellate decisions when a section [1172.6] petition reaches the stage of a full-fledged evidentiary hearing."].)

However, if the record contains facts refuting the allegations in the petition, the court may make a credibility determination adverse to the petitioner. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Strong*, *supra*, 13 Cal.5th at p. 708.)

A trial court's failure to comply with these statutory requirements is harmless if the record of conviction establishes that a defendant is ineligible for section 1172.6 relief as a matter of law. (See *Lewis*, *supra*, 11 Cal.5th at p. 973.) Our Supreme Court has held that a trial court's statutory omissions at the first step process under section 1172.6 are not state or federal constitutional violations. (*Lewis*, at p. 973; see *People v. Hurtado*

10

(2023) 89 Cal.App.5th 887, 893.) Hence, a trial court's failure to follow the procedures enacted in section 1172.6 is analyzed for prejudice under the state law standard of *People v. Watson* (1956) 46 Cal.2d 818, 836. (*Lewis*, at pp. 973-974.)

We independently review a trial court's determination of whether a petitioner has made a prima facie showing. (*Harden*, *supra*, 81 Cal.App.5th 45, 52.) "[W]e may affirm a ruling that is correct in law on any ground." (*People v. Cortes* (2022) 75 Cal.App.5th 198, 204.)

B. *Analysis*

Defendant argues the overt act findings were worded in such a way that the jury could have based its findings on acts committed by "other unidentified co-conspirators" without also finding defendant committed any of the overt acts. He also asserts that the conspiracy instructions imputed the acts of any conspirator to all of the conspirators and allowed the jury to convict defendant of felony murder based on conspiring with others to commit the kidnapping. He further contends the special circumstance instruction only required the jury to find that a murder was committed during the kidnapping and that the instructions given did not expressly require a conclusion defendant personally committed the murder, or that if he was not the actual killer, that he specifically intended to kill.[5]

---

[5] The People concede the trial court improperly engaged in factfinding at the prima facie stage; that the finding on Overt Act No. 13 left open the possibility someone other than defendant was the actual killer; and that the felony murder jury instructions cannot be given preclusive effect because defendant was tried before *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 were decided. The People, however, maintain that reading the jury instructions as a whole and the jury verdicts show defendant's culpable conduct even if he was not the actual killer. Our

*[footnote continued on next page]*

11

Based on our review of the record of conviction in this case and the holding in *Morris*, we agree with defendant. Moreover, during oral argument, the Attorney General conceded that based on the jury instructions given to the jurors in this case at the time of defendant's trial, the matter should be remanded to hold an evidentiary hearing.

Prior to the *Morris* decision, there was a split of authority amongst the Courts of Appeal as to whether a nonkiller can be held liable for felony murder based on aiding and abetting the underlying felony alone. (See *People v. Lopez* (2023) 88 Cal.App.5th 566, 574, review den. May 31, 2023, S279347 [defendant must aid the underlying felony]; *People v. Morris* (2024) 100 Cal.App.5th 1016, review granted Jul. 17, 2024, S284751 [underlying felony]; *People v. Lopez* (2024) 104 Cal.App.5th 616, review granted Nov. 13, 2024, S278162 [underlying felony]; *People v. Kelly* (2024) 105 Cal.App.5th 162, review granted Nov. 26, 2024, S287341 [defendant must aid the killing]; *People v. Jackson* (2025) 110 Cal.App.5th 128, review granted June 11, 2025, S290457 [killing]; *People v. Taito* (2025) 115 Cal.App.5th 694, 704 [underlying felony].)

On May 4, 2026, our Supreme Court issued its decision in *Morris* resolving the split of authority. The issue in *Morris* was "whether Morris is precluded from making a prima facie showing for resentencing relief under section 1172.6 as a nonkiller aider or abettor of robbery and rape with intent to kill." (*Morris*, *supra*, 19 Cal.5th at p. 678.) Morris argued that to be denied resentencing relief, "when a nonkiller acts with an intent to kill, the nonkiller must aid the actual killer in the lethal act." (*Ibid*.) The Attorney

independent review of the record shows that defendant was ineligible for section 1172.6 relief as a matter of law.

12

General asserted to the contrary "that when a nonkiller acts with an intent to kill, the nonkiller need only aid in the underlying felony." (*Ibid.*) The *Morris* court disagreed and interpreted section 189, subdivision (e)(2) "to mean just what it says: the phrase 'aided . . . or assisted the actual killer in the commission of murder in the first degree' [citation] requires proof the defendant aided or abetted the actual killer in the lethal act itself, and not just the underlying felony." (*Morris*, at p. 678.) In reaching that conclusion, the Supreme Court in *Morris* reversed the Court of Appeal's decision and remanded the matter for reconsideration. (*Ibid.*)

In *Morris*, "[b]ased upon the felony murder special-circumstance jury instructions given in this case, the parties agree that the record of conviction establishes as a matter of law that Morris acted with the intent to kill." (*Morris*, *supra*, 19 Cal.5th at p. 679.) In addition, similar to this case, in *Morris*, there was "also no real dispute that, based upon the aiding and abetting for first degree felony murder jury instruction given in this case, the record of conviction also establishes that, even if Morris did not fire the fatal shot, he aided and abetted the actual killer in the underlying felonies." (*Ibid.*) The disagreement in *Morris*, like in the present case, involved the actus reus requirement, "specifically, what acts are required to prove the actus reus under section 189, subdivision (e)(2)." (*Id.* at p. 681.) The *Morris* court interpreted the phrase in that statute, " 'in the commission of murder in the first degree' consistent with its natural meaning to require proof the defendant aided or abetted the actual killer in the lethal act." (*Ibid.*)

13

Applying the rules of statutory construction, the Supreme Court first looked at the words of section 189, subdivision (e)(2) to give those words a plain and commonsense meaning. (*Morris*, *supra*, 19 Cal.5th at p. 683.) The court explained, "[t]he commonsense meaning of aiding or abetting 'the actual killer in the commission of murder in the first degree,' involves aiding or abetting the killing of a human being, and not just aiding and abetting another in the commission of an enumerated felony by an act that does not aid in the killing. [Citation.]" (*Ibid.*) The court found the meaning of the statute "inescapable" based on the inclusion of " 'actual killer' " in that phrase. (*Ibid.*) The court explained, "When the words 'actual killer' are included in the phrase, so that it reads, 'aided, abetted . . . or assisted the *actual killer* in the *commission of murder* in the first degree,' the ordinary meaning of the statutory language is inescapable: assisting the killer in killing." [Citation.] A person is not 'the actual killer' unless they directly cause a death. To aid 'the actual killer' is to aid the very act that defines that individual—the lethal act itself. The most natural reading therefore is that aiding 'the actual killer' with the commission of murder implies aiding with the lethal act rather than aiding the person (who ends up committing the lethal act) with some felonious act." (*Ibid.*) Thus, agreeing with the dissent in *Morris*, *supra*, 100 Cal.App.5th at page 1031 (dis. opn. of Moore, J.), the court concluded, "the language of section 189, subdivision (e)(2) is 'plain and unambiguous.' [Citation.]" (*Morris*, at p. 683.)

The *Morris* court further concluded its reasoning was reinforced by the fact the statutory provision, read in context with the remainder of subdivision (e) of section 189,

14

"requires a nonkiller to aid the actual killer in the lethal act itself." (*Morris*, *supra*, 19 Cal.5th at p. 683.) More specifically, the court explained "[t]he fact that the Legislature used the phrase 'underlying felony' elsewhere in section 189, but did not do so in subdivision (e)(2), shows that the Legislature knows how to use the term 'underlying felony' in section 189 when that is the intent." (*Morris*, at pp. 683-684.)

To the extent the Attorney General in *Morris* argued that the financial-gain special circumstance finding necessarily showed the defendant had aided and abetted the killing itself, the Supreme Court rejected that argument, as well as the Attorney General's reliance on *People v. Dickey* (2005) 35 Cal.4th 884, 900-901 (*Dickey*).[6] The *Morris* court explained, "the Attorney General's interpretation would mean that the latter portion of subdivision (e)(2) [of section 189]—i.e., that the defendant 'aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree'—would be redundant of what is already in the preamble in subdivision (e). The Attorney General contends this surplusage is present in subdivision (e)(2) because the Legislature used the language from the felony murder special circumstance ('commission of murder in the first degree') as a way to signal that

---

[6] In *Dickey*, *supra*, 35 Cal.4th 884, the Supreme Court interpreted "in the commission of murder in the first degree" language found in the felony murder special circumstance long before Senate Bill No. 1437 was enacted. (*Morris*, *supra*, 19 Cal.5th at p. 686.) "In *Dickey*, the court interpreted the felony-murder special circumstance in section 190.2, former subdivision (b), which applied to "[e]very person . . . found guilty of intentionally aiding, abetting . . . or assisting any actor in the commission of murder in the first degree . . . ." (§ 190.2, former subd. (b); see now § 190.2, subd. (c).) We interpreted this language to only require aiding or abetting the underlying felony and not the lethal act itself. [Citation.]" (*Morris*, at p. 686, citing *Dickey*, at pp. 900-903.)

15

it was importing the same (broad) meaning that had been assigned to the phrase in the felony murder special-circumstance context.  However, the Attorney General's reliance on *Dickey* and the felony murder special-circumstance is misplaced because *Dickey* did not turn on any parsing of the language of section 190.2, subdivision (c), but on application of a background legal principle that is no longer good law." (*Morris*, *supra*, 19 Cal.5th at p. 686.)

"Specifically, Senate Bill [No.] 1437 abrogated the premise of *Dickey* by substantially changing the felony-murder rule.  Our holding in *Dickey* relied upon the principle that '[a]ll persons aiding or abetting the commission of burglary or robbery are guilty of first degree murder when one of them kills while acting in furtherance of the common design.' [Citation.]  Applying that rule, we concluded that section 190.2, former subdivision (b) was 'not helpful to [the] defendant because, under the felony-murder doctrine, he was found guilty of aiding or abetting first degree murders.' [Citation.]  However, Senate Bill [No.] 1437 'narrows the felony-murder rule significantly by limiting it to the actual killer and to accomplices who either intend to kill and aid in the murder or play a major role in the underlying felony and act with reckless indifference to human life.' [Citation.]  This change abrogates *Dickey*'s reasoning because now '[i]t is no longer true that all persons who aided in a burglary or robbery are guilty of murder when one of them kills during that offense.  Whether such a participant is liable for murder is what the jury is now charged with deciding when it applies section 189[, subdivision] (e).' [Citations.]  Thus, the question we are presented with here is which

16

individuals remain liable for first degree murder. To allow the now-outdated legal principle informing *Dickey* to dictate our decision here would be circular and inconsistent with the very purpose of Senate Bill [No.] 1437's changes to the felony-murder rule." (*Morris*, *supra*, 19 Cal.5th at p. 687.)

The *Morris* court also rejected the Attorney General's arguments relating to the legislative history of Senate Bill No. 1437, and concluded that "[t]he legislative history . . . shows that the Legislature was interested in addressing both the acts and intent required to prove felony murder, and it certainly does not demonstrate that Senate Bill No. 1437 was concerned only with barring the imputation of malice to aiders and abettors to murder." (*Morris*, *supra*, 19 Cal.5th at p. 689.)

The Supreme Court in *Morris* also determined that interpreting section 189, subdivision (e)(2) to require a nonkiller to aid the lethal act itself would not lead to illogical results. (*Morris*, *supra*, 19 Cal.5th at pp. 689-693.) The court noted, "It may be, as the Attorney General contends, that the Legislature was trying to create an inversely proportional relationship between actus reus and mens rea for the three theories of felony-murder liability in subdivision (e). However, it may also be that the Legislature simply was trying to create different paths to liability in order to better accord with an individual's culpability depending on the circumstances of the case. (See Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1437, *supra*, as amended May 25, 2018, p. 4 [" 'restor[ing] proportional responsibility in the application of California's murder statute reserving the harshest punishments for those who intentionally planned or actually

17

committed the killing' "].) This conclusion is consistent with the language the Legislature enacted. And it is not illogical to conclude that the Legislature sought to capture three different scenarios of potential liability—as opposed to create a perfect, inverse sliding scale of actus reus and mens rea culpability—especially since there is nothing in the legislative history that reflects such an intent. (*Morris*, *supra*,19 Cal.5th at p. 690.)

In sum, *Morris* holds that "section 189, subdivision (e)(2) requires that the nonkiller aid or abet the actual killer in the lethal act itself, and not just the underlying felony." (*Morris*, *supra*, 19 Cal. 5th at p. 693.)

Here, the record of conviction does not establish as a matter of law that defendant participated in aiding and abetting the kidnapping and other acts that led to the victim's death and that he acted with the intent to kill. The overt act findings which included defendant were worded in such a way that the jury could have based its findings on acts committed by "other unidentified co-conspirators" without also finding defendant committed any of the overt acts. The true finding on Overt Act No. 13 read: "We, the jury in the above entitled action, find that on or about June 24, 1997, coconspirator GILBERT ANDRADE, *and/or other unidentified coconspirators*, murdered victim Russell Travis Dorff in San Bernardino County." The conspiracy instructions imputed the acts of any conspirator to all of the conspirators and allowed the jury to convict defendant of felony murder based on conspiring with others to commit the kidnapping. And the special circumstance instruction only required the jury to find that a murder was

18

committed during the kidnapping; the instructions given did not expressly require a conclusion that defendant personally committed the murder, or that if he was not the actual killer, that he specifically intended to kill.

CALJIC No. 8.80.1 did not implicitly require the jury to find defendant acted with the intent to kill if they did not find him to be the actual killer. The instruction told the jury they could find the special circumstance true if they found defendant guilty of murder during the commission of kidnapping; the instruction also told jurors that they did not have to find intent to kill if they found he was the actual killer. Reading the instructions as a whole, the jury was told a murder committed during a kidnapping is first degree murder, even if the killing was unintentional, and that the only specific intent needed was the intent to commit kidnapping. Taken together, the jury would not necessarily have read or understood CALJIC No. 8.80.1 to require a finding of specific intent to kill for an aider and abettor.

Based on foregoing, the recent decision in *Morris* supports defendant's claim that the trial court erred in denying his section 1172.6 petition for resentencing at the prima facie stage. We thus reverse the trial court's order and remand the matter with directions to issue an order to show cause and to conduct an evidentiary hearing.

## IV.

## DISPOSITION

The trial court's postjudgment order denying defendant's section 1172.6 petition is reversed and the matter is remanded with directions to issue an order to show cause and to conduct an evidentiary hearing.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


MILLER
Acting P. J.


RAPHAEL
J.

20